UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                    Chapter 11

Randy D Plasterer                                         Case No. 8-22-71632-las
aka Randy Ashley Plasterer,

                        Debtor.
-------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER DENYING DEBTOR'S
## MOTION FOR STAY PENDING APPEAL

Before the Court is the motion [Dkt. No. 103] (the "Stay Motion") filed by the debtor, Randy D. Plasterer (the "Debtor"), for a stay pending appeal of the Court's Order dismissing his chapter 11 case. The Stay Motion was fully briefed, and the Court heard oral argument on September 21, 2023. For the reasons set forth below, the Stay Motion is denied.[1] The Debtor has not demonstrated that a stay is warranted because he failed to satisfy any of the four factors courts consider in determining whether to grant or deny a stay pending appeal under Bankruptcy Rule 8007(a)(1)(A).

## BACKGROUND

On July 5, 2022, the Debtor, represented by counsel, filed a chapter 11 petition. [Dkt. No. 1].[2] According to Schedule A/B-Property filed by the Debtor in this chapter 11 case, he owns the residential real property located at 481 Deer Park Road, Dix Hills, New York (the "Property")[3], where he resides with his non-filing spouse. [Dkt. No. 10].

---

[1] Upon completion of the hearing, and for the reasons set forth on the record of the hearing, the Court denied the Stay Motion. This Memorandum Decision and Order is consistent with and explains further the bases for the Court's ruling.

[2] The chapter 11 case is the Debtor's second bankruptcy filing. He previously filed a chapter 13 petition on March 18, 2022. The chapter 13 case was dismissed by Order dated May 3, 2022, entered pursuant to 11 U.S.C. § 521(i) for failure to comply with disclosure requirements.

[3] At the hearing, counsel for the First Mortgagee (as defined herein) confirmed that a judgment of foreclosure and sale was entered in foreclosure proceedings commenced in state court in connection with the Property. A sale is scheduled for October 4, 2023.

On October 4, 2022, the Debtor's counsel moved to withdraw as counsel of record in this chapter 11 case. [Dkt. No. 17]. The Debtor did not oppose the motion. A hearing on the motion was held on October 27, 2023, at which the Debtor appeared. On November 1, 2022, the Court entered an order granting counsel's motion to withdraw. [Dkt. No. 20]. The Debtor has since proceeded *pro se* in his chapter 11 case.

On February 14, 2023, the Debtor filed a plan of reorganization [Dkt. No. 36] (the "Plan"). The Plan proposed to pay U.S. Bank National Association, Not In Its Individual Capacity But Solely As Owner Trustee for VRMTG Asset Trust, by Fay Servicing, LLC ("First Mortgagee"), the sum of $1,500.00, for 20 or 22 months. The Plan further proposed that the balance of the mortgage indebtedness to the First Mortgagee would be paid at an unspecified time after 20-22 months from the proceeds of a sale or refinancing of the Property. The Plan also stated that a second mortgage on the Property had been satisfied. Plan at 2. The Debtor did not file a disclosure statement under 11 U.S.C. § 1125[4] in connection with the Plan. *See* Bankruptcy Rule 3016(b).

On April 17, 2023, counsel for the First Mortgagee filed a letter (the "Status Letter") informing the Court that the Debtor had been evaluated for a mortgage modification, but failed to qualify, on five separate occasions. [Dkt. No. 62]. In the Status Letter, the First Mortgagee stated that the most recent denial letter was issued in January 2023, and that the Debtor's debt-to-income ratio exceeded "the threshold for eligibility for mortgage assistance." *Id.* at 1. Counsel for the First Mortgagee further noted that the Debtor had not made any post-petition payments, resulting in a post-petition delinquency of approximately $23,978.02. *Id.*

---

[4] All statutory references to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will hereinafter be referred to as "§ (section number)."

2

On April 21, 2023, the United States Trustee for Region 2 ("UST") filed a motion to dismiss the Debtor's chapter 11 case, or in the alternative, to convert the chapter 11 case to a case under chapter 7 pursuant to § 1112(b) [Dkt. No. 63] (the "Dismissal Motion"). The Dismissal Motion alleged that, due to the Debtor's inability to generate income in the thirteen months following the filing of his chapter 11 petition, cause existed to dismiss the case due to substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation. *See generally id.* On May 19, 2023, the Debtor filed a "Response to Notice Regarding Hearing." [Dkt. No. 67]. On July 31, 2023, the Debtor filed an opposition to the Dismissal Motion. [Dkt. No. 91]. The Dismissal Motion was returnable on June 15, 2023, and was adjourned on consent of the UST to July 20, 2023, and again to August 3, 2023.

On April 21, 2023, the First Mortgagee moved for relief from the automatic stay imposed under § 362(a) to continue to enforce its rights and remedies under the judgment of foreclosure and sale entered prior to the commencement of the Debtor's chapter 11 case ("Stay Relief Motion") [Dkt. No. 65]. That motion was returnable on June 15, 2023, and was adjourned with the consent of the First Mortgagee to July 20, 2023, and again to August 3, 2023. The adjournment of the Stay Relief Motion and the Dismissal Motion gave the Debtor additional time to propose a confirmable chapter 11 plan.

On August 3, 2023, the Court held a hearing ("Dismissal Hearing") to consider the relief requested in the Dismissal Motion, with appearances by the Debtor, the UST, and counsel to the First Mortgagee. At the conclusion of the Dismissal Hearing, for the reasons set forth on the record, the Court found that the UST had met its burden to establish cause under § 1112(b)(4) to dismiss the chapter 11 case. Having so determined, the Court marked off the calendar the Stay Relief Motion filed by the First Mortgagee. On August 4, 2023, the Court entered an order dismissing the chapter 11 case [Dkt. No. 100] (the "Dismissal Order").

On August 14, 2023, the Debtor filed a notice of appeal of the Dismissal Order [Dkt. No. 102], as well as the Stay Motion [Dkt. No. 103].[5] The First Mortgagee filed an objection to the Stay Motion on August 28, 2023 [Dkt. No. 120] ("First Mortgagee Opp."). The UST filed an objection to the Stay Motion on September 12, 2023 [Dkt. No.123] ("UST Obj."). On September 15, 2023, the Debtor filed a reply to the objections filed by the First Mortgagee and the UST [Dkt. No.134], and on September 18, 2023, the Debtor filed an amended reply [Dkt. No. 134] ("Reply"). The Court heard oral argument on September 21, 2023 (the "Stay Hearing").

## DISCUSSION

I.     Legal Standard

Bankruptcy Rule 8007(a)(1)(A) allows a party to move the bankruptcy court for a "stay of a judgment, order, or decree of the bankruptcy court pending appeal." Fed. R. Bankr. P. 8007(a)(1)(A). Stays pending appeal under Rule 8007 "are the exception, not the rule, and are granted only in limited circumstances." *See In re LATAM Airlines Grp. S.A.*, No. 20-11254 (JLG), 2022 WL 2657345, at *4 (Bankr. S.D.N.Y. July 8, 2022) (quoting *In re Brown*, No. 18-10617, 2020 WL 3264057, at *5 (Bankr. S.D.N.Y. June 10, 2020)). The party seeking a stay pending appeal "carries a heavy burden." *Id.* (quoting *In re Adelphia Commc'ns Corp.*, 333 B.R. 649, 659 (S.D.N.Y. 2005)).

The decision to grant or deny a stay pending appeal lies within the discretion of the court. *In re Giambrone*, 600 B.R. 207, 212 (Bankr. E.D.N.Y. 2019). In deciding whether to grant a stay pending appeal, courts in the Second Circuit consider the following four factors:

(1) whether the movant will suffer irreparable injury absent a stay;
(2) whether a party will suffer substantial injury if a stay is issued;

---

[5] On August 16, 2023, the Debtor filed a letter requesting that the Court set the hearing on the Stay Motion for September 21, 2023. [Dkt. No. 108]. The Court entered a scheduling order granting this request on August 17, 2023. [Dkt. No. 111].

4

> (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal; and
> (4) the public interests that may be affected.

*See Int'l Christian Broadcasting, Inc. v. Koper (In re Koper)*, 560 B.R. 68, 72 (Bankr. E.D.N.Y. 2016) (citing *Hirschfeld v. Bd. of Elections in the City of N.Y.*, 984 F.2d 35, 39 (2d Cir. 1993)); *In re Adelphia Commc'ns Corp.*, 333 B.R. at 659. The moving party bears the burden of proving that it is entitled to a stay. *See Koper*, 560 B.R. at 72. Although some courts in the Second Circuit have held that a movant must "show satisfactory evidence on all four criteria[,]" *see In re Giambrone*, 600 B.R. at 212; *In re Taub*, No. 08-44210, 2010 WL 3911360, at *2 (Bankr. E.D.N.Y. Oct. 1, 2010); *In re Adelphia Commc'ns Corp.*, 333 B.R. at 659, other courts have recognized that the Second Circuit "has consistently treated the inquiry of whether to grant a stay pending appeal as a balancing of factors that must be weighed." *See, e.g.*, *In re Voyager Digital Holdings, Inc.*, No. 23 CIV. 02171 (JHR), 2023 WL 2731737, at *7 (S.D.N.Y. Apr. 1, 2023), *appeal dismissed*, No. 23-467, 2023 WL 4310688 (2d Cir. Apr. 11, 2023); *In re Sabine Oil & Gas Corp.*, 548 B.R. 674, 681 (Bankr. S.D.N.Y.2016).

With these legal principles in mind, the Court now addresses the four factors. For the reasons set forth below, under either approach – the rigid rule or the balancing of factors analysis – the Court finds that the Debtor has failed to satisfy the requirements for a stay pending appeal. All four factors weigh in favor of denying the Stay Motion. This is so even applying the more lenient standards applicable to pleadings filed by a *pro se* party. *See generally In re Yesko*, No. 12-11410 (SHL), 2013 WL 5878411, at *3 (Bankr. S.D.N.Y. Nov. 1, 2013).

II. Analysis

    A. Irreparable Harm

"A showing of probable irreparable harm is the principal prerequisite for issuance of a [Rule 8007] stay. Irreparable harm must be neither remote nor speculative, but actual and imminent." *Koper*, 560 B.R. at 74 (quoting *In re Taub*, 470 B.R. 273, 278 (E.D.N.Y. 2012) and *ACC Bondholder Group v. Adelphia Commc'ns Corp.* (*In re Adelphia Commc'ns Corp.*), 361 B.R. 337, 347 (S.D.N.Y. 2007)).

The Debtor asserts a single alleged irreparable harm. He maintains that he will suffer irreparable harm if the stay is not granted because dismissal of the case "lead[s] to the loss of the protections offered by Chapter 11, including the automatic stay[.]" Stay Mot. at 2. The Debtor disregards the Court's remarks at the Dismissal Hearing, where the Court noted that the chapter 11 case was not dismissed "with prejudice." *See* Hear'g Tr. at 39:6 ("The dismissal is not a dismissal with prejudice."); *id.* at 40:6-8 ("this would not be a dismissal with prejudice"); *id.* at 43:5-6 ("[T]he Chapter 11 case is dismissed without prejudice."); *id.* at 45:24-46:7 ("[B]ear in mind again, it's not a dismissal with prejudice."). The Court identified multiple avenues that remain available to the Debtor following dismissal of his chapter 11 case. For instance, the Debtor may file a petition under chapter 13 or chapter 7 of the Bankruptcy Code, thereby triggering the protection of the automatic stay. *See* Hear'g Tr. at 39:7-9 ("If you feel that you would benefit from bankruptcy relief, nothing precludes you from filing a [case under] Chapter 13 or . . . Chapter 7."); *id.* at 43:6-8 ("You could file for Chapter 13 if you think it's warranted. You could file[] for Chapter 7."); *see also id.* at 40:13-16 (wherein counsel for First Mortgagee posits that, "if another filing were to occur, such as a 13, which is a little less complex, I think that there might be more avenues to resolve this").

Significantly, at the Stay Hearing, the Debtor acknowledged that if he is unable to refinance the debt on the Property or negotiate an arrangement with the First Mortgagee before the sale of the Property scheduled for October 4, 2023, he intends to file a chapter 13

6

petition to receive the benefit of the automatic stay, thereby stopping the foreclosure sale. The Debtor's remarks at the Stay Hearing underscore that he will not suffer irreparable harm absent a stay.

Furthermore, as the Court noted on the record at both the Dismissal Hearing and the Stay Hearing, nothing precludes the Debtor from continuing to engage in negotiations[6] with the First Mortgagee to restructure the remaining debt on the Property. *Id.* at 39:14-18 ("But the dismissal doesn't stop you from reaching out to the mortgagee and demonstrating to the mortgagee that you can immediately start making payments, that you have the financial wherewithal to retire the debt on the following terms."); *id.* at 46:2-7 ("You are free even today outside in the hallway to have a chat if both of you have the time with Mr. Raymond about what can be done going forward. And it may very well be that your continuing dialogue, if there is a continuing dialogue, results in reaching agreement and you no longer will be seeking any other type of bankruptcy relief.").

Thus, the single alleged irreparable harm – loss of the benefit of the automatic stay to thwart the scheduled foreclosure sale – is neither actual nor imminent as the Debtor may stop the foreclosure sale by either filing for bankruptcy, which will trigger the automatic stay, or gaining consent of the First Mortgagee to postpone the foreclosure sale after demonstrating that he has the financial wherewithal to retire the mortgage debt in full pursuant to an agreed-upon mortgage modification or through a sale or refinancing of the Property.

### B. Substantial Harm to the Non-Moving Party

---

[6] In his Reply, the Debtor maintains that negotiations with the First Mortgagee are ongoing, and even suggests that remaining issues regarding the outstanding mortgage debt on the Property may be resolved *before* the appeal itself is resolved. This further illustrates that the Debtor will not suffer irreparable harm in the absence of a stay. Reply at 2 ("Debtor fully intends to replace or pay off the mortgage managed by Fay, most likely before this appeal is even completed.").

The Debtor must establish that a stay pending appeal will not cause substantial injury to other parties to the proceedings. *Koper*, 560 B.R. at 75. In other words, he must show that "the balance of harms tips in favor of granting a stay." *Id.*

The Debtor insists that "VRTGM/Fay will continue to collect all expected interest and principal as if the prior mortgage agreed to were still in effect." Stay Mot. at 2. The alleged lack of harm to the First Mortgagee is belied by the record in this chapter 11 case. The Plan is speculative as to payment of the mortgage debt after the reduced payment of $1,500 per month for 20 to 22 months and the Debtor's Monthly Operating Reports show that he has not generated any income during his chapter 11 case. The UST notes that "the Debtor has never . . . submitted admissible evidence he was either making post-petition mortgage payments or paying post-petition insurance premiums or real property taxes, in the first place." UST Obj. at 10. Furthermore, the Monthly Operating Reports prepared and filed by the Debtor confirm that he did not make any of these payments while in chapter 11 due to his lack of income. *Id.*; *see also* Status Letter at 1.

As contended by the First Mortgagee, a stay would subject the First Mortgagee, which "continues to expend funds for taxes and insurance" on the Property (First Mortgagee Opp. ¶¶ 14-15), to further delay and prejudice its ability to exercise its rights under the mortgage and foreclose on its collateral. *See In re G.L.A.D. Enterprises, LLC*, No. 22-35425, 2023 WL 3856331, at *3 (Bankr. S.D.N.Y. June 6, 2023) (noting that "Deutsche Bank and others may suffer harm from a stay pending appeal" where "Debtor has failed to make payments for over fourteen years and has delayed enforcement of the Secured Creditor's rights for nearly as long through multiple bankruptcy filings, and concluding that "[g]ranting the Debtor's relief would further delay Deutsche Bank's efforts to pursue foreclosure"); *In re Jones*, No. 23-35048, 2023 WL 3856333, at *3 (Bankr. S.D.N.Y. June 6, 2023) (concluding that "there may be substantial harm to [secured creditor] if the stay is imposed for the duration of the appeal"

8

because the stay would "delay [secured creditor's] foreclosure action[,] which it seeks to pursue with respect to its mortgage on the Debtor's property").

Here, the Debtor has not made any payments in respect of the mortgage debt since November 2013. *See* Dismissal Motion at 6. According to the First Mortgagee, accrued and unpaid interest on the mortgage totals $111,714.52, and the escrow deficiency for funds advanced for taxes and insurance totals $82,995.14. These amounts, together with the outstanding principal balance of $233,946.93 and prepetition fees and costs of $14,906.20, reflect a total mortgage indebtedness as of the chapter 11 petition date of $443,562.79. *See* Affirmation in Support of Motion for Relief from Automatic Stay ¶ 12 [Dkt. No. 65-1]; Proof of Claim 4-1 filed September 12, 2022.

In sum, the harms to the First Mortgagee weigh against the grant of a stay.

### C.  Substantial Possibility of Success on Appeal

The "'substantial possibility of success' test is considered an intermediate level between 'possible' and 'probable' and is 'intended to eliminate frivolous appeals.'" *Sabine Oil*, 548 B.R. at 683–84. Courts have recognized that "[t]he requisite showing of substantial possibility of success is inversely proportional to the amount of irreparable injury [plaintiff] will suffer absent the stay." *Taub*, 470 B.R. at 278 (citing *In re Adelphia Comms. Corp.*, 361 B.R. at 349).

In conclusory fashion, the Debtor maintains that he is likely to succeed on the merits of the appeal. Stay Mot. at 2 (arguing that "dismissal of the case was premature and contrary to the principles of due process and fairness as embodied in the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure"). In response, the UST notes that, "the Stay Motion fails to allege that the Court made an error of law, fact or procedure, or in any manner abused its discretion in entering the Dismissal Order." *See* UST Obj. at 9; *see also* First Mortgagee Opp. ¶ 13.

For the following reasons, the Court finds that, based on the undisputed facts and the applicable law for confirmation of a chapter 11 plan, the Debtor's conclusory argument that he is likely to succeed on his appeal lacks support in the case law and under the controlling provisions of the Bankruptcy Code.

1. *Substantial or Continuing loss to, or Diminution of the Estate and the Absence of a Reasonable Likelihood of Rehabilitation*

Section 1112(b) of the Bankruptcy Code provides that a court shall convert a chapter 11 case to a case under chapter 7 or dismiss a chapter 11 case, whichever is in the best interests of creditors and the estate, for cause, unless the court determines that one of the two limited exceptions[7] set forth in § 1112(b)(1) and (b)(2) apply. 11 U.S.C. § 1112(b)(1); *In re Adamo*, No. 14-73640-LAS, 2016 WL 859349, at *9–10 (Bankr. E.D.N.Y. Mar. 4, 2016); *see also* Hear'g Tr. at 36:21-37:2 ("Once cause has been established under Section 1112(b), the Court has no discretion. The statute says that if cause is established, the Court shall dismiss or convert the case, whichever is in the best interest of the estate and creditors[.]").

Courts have broad discretion to determine whether cause exists[8] to dismiss or convert a chapter 11 case under section 1112(b). *In re Adamo*, 2016 WL 859349, at *10. Under § 1112(b)(4)(A), cause for conversion or dismissal is established if there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1124(b)(4)(A); *In re First*, No. 22-11020, 2022 WL 17723916, at *4 (Bankr. S.D.N.Y. Dec. 15, 2022) (internal citations omitted). In determining whether a loss to, or diminution of, the estate exists, "a court must make a full evaluation of the present

---

[7] As stated on the record at the Dismissal Hearing, neither of these exceptions apply here. Hear'g Tr. at 36:21-37:2.

[8] In his Reply, the Debtor argues that "late reports are not cause to dismiss." Reply at 1. For purposes of clarification, the Court notes that § 1112(b)(4)(F) recognizes the "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter" as cause to convert or dismiss a case. 11 U.S.C. § 1112(b)(4)(F).

10

condition of the estate, not merely look at the Debtor's financial statements." *In re First*, 2022 WL 17723916, at *4 (internal citations omitted). The requisite loss or diminution can be found where, for instance, "a debtor consistently suffers a post-petition negative cash flow and is unable to pay current expenses." *Id.* (internal citations omitted); *see also In re Adamo*, 2016 WL 859349, at *11 (same). Even where a debtor shows positive cash flow, continuing loss to or diminution of the estate can also be established by an actual depreciation in the value of property of the estate. *In re Adamo*, 2016 WL 859349, at *11. Further, "rehabilitation means to put back in good condition and reestablish on a sound basis," and "implies establishing a cash flow from which its current obligations can be met." *In re First*, 2022 WL 17723916, at *4; *In re Adamo*, 2016 WL 859349, at *11 (noting that, for purposes of "rehabilitation," a debtor must be "reestablished on a secured financial basis"). As discussed below, because the Debtor does not show any income in his Monthly Operating Reports and has failed to propose a confirmable plan – and would be unable to fund such plan, in any event – the Debtor faces multiple obstacles on appeal and his chance of success is remote. During the more than one year in chapter 11, the Debtor did not seek to retain a broker to market and sell the Property or present any evidence that he applied for a refinancing of the existing mortgage debt.

The Monthly Operating Reports prepared and filed by the Debtor reflect that he is not earning *any* income.[9] Hear'g Tr. at 37:9-12 ("And when we look at your operating reports according to the Office of the United States Trustee, there is no income[.]"); *see also* Dismissal Mot. at 6 (noting that, with the exception of a single deposit in August 2022, "[e]very subsequent Monthly Operating Report reveals that the Debtor is not generating any income"

---

[9] In his reply, the Debtor maintains that "[c]ontrary to the Trustee's outdated information," he has "secured a new source of income[.]" Reply at 1. The Court notes that nothing on the docket supports the Debtor's contention. It bears repeating that the Monthly Operating Reports prepared and filed by the Debtor reflect that he is not earning any income.

11

and that "they do not show that the Debtor is meeting his current obligations. . . . Despite the Debtor's best efforts, he is unable to generate income sufficient to either pay his creditors or meet his current obligations"); *id.* ¶¶ 13, 24, 30 (same). Thus, based on the record in this chapter 11 case, as developed by the Debtor, the Monthly Operating Reports show that he has no income from which to defray his mortgage debt, including insurance and real estate taxes, or to fund a confirmable chapter 11 plan, the terms of which are speculative after 20 to 22 months of payments that, as discussed below, impermissibly rewrite the mortgage debt.

### 2. *Inability to Confirm a Plan*

In addition to the enumerated examples of "cause" set forth in § 1112(b)(4), a bankruptcy court may dismiss a case due to the debtor's inability to confirm a feasible plan of reorganization. *See Lippman v. Big Six Towers, Inc.*, No. 20-CV-973 (WFK), 2021 WL 1784312, at *3 (E.D.N.Y. May 5, 2021); *In re Babayoff*, 445 B.R. 64, 76 (Bankr. E.D.N.Y. 2011) ("Courts recognize that cause under Section 1112(b) may be established where the record shows that the debtor cannot effectuate a plan.").

A plan may be confirmed consensually only if it meets the criteria in every subsection of Section 1129(a). *Lippman*, 2021 WL 1784312, at *3. Section 1129(a)(1) requires that a plan "compl[y] with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1). One such applicable provision is § 1123(b)(5), which allows a chapter 11 plan to "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*[.]" 11 U.S.C. § 1123(b)(5) (emphasis added); *In re Depietto*, No. 20-CV-8043 (KMK), 2021 WL 3287416, at *2 (S.D.N.Y. Aug. 2, 2021) (noting that claim "secured exclusively by the mortgage on Debtor's principal residence" was protected from modification by §1123(b)(5)); *In re Pomilio*, 425 B.R. 11, 18 (Bankr. E.D.N.Y. 2010) (observing generally that, "[i]n Chapter 11 cases, § 1123(b)(5) permits a plan proponent

12

to 'modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence'"). Thus, the home mortgage is a protected secured debt under § 1123(b)(5). This provision excepts home mortgages from a "cram down" and precludes a debtor from unilaterally rewriting the terms of the mortgage debt. Here, the Debtor proposes to do just that – alter the terms of the mortgage by paying the First Mortgagee $1,500 per month for 20 to 22 months with an unspecified timeframe for paying off the balance of the mortgage debt by a sale or refinancing of the Property. The Plan cannot be confirmed as a matter of law as it fails to satisfy § 1129(a)(1) because it violates § 1123(b)(5).[10]

The Plan is not confirmable for an additional reason. As determined at the Dismissal Hearing, and as reiterated at the Stay Hearing, the Plan will not satisfy § 1129(a)(10). Hear'g Tr. at 6:14-7:4; 18:6-19:5; 38:2-6.

Section 1129(a)(10) requires that, "[i]f a class of claims is impaired under the plan, *at least one class of claims that is impaired under the plan has accepted the plan*, determined without including any acceptance of the plan by any insider." 11 U.S.C. § 1129(a)(10) (emphasis added). The Plan lists one impaired class of creditors, the First Mortgagee. Plan at 2 ("ONLY Fay/Wells Fargo/Mortgage Holder is the only secured mortgage holder. Fay is the ONLY reason for this Bankruptcy. All OTHER participants listed are NOT late or delinquent and are up to date/current. There is no other Debt for the Debtor[.]"). According to the Plan, the claim of the First Mortgagee is impaired as the Debtor seeks to alter the terms of the mortgage by structuring a payment of $1,500 per month for 20 to 22 months and then pay off the balance of the debt over an unspecified timeframe via a sale or refinancing

---

[10] The application of § 1123(b)(5) was made known to the Debtor by the First Mortgagee shortly after he filed his chapter 11 plan. *See* Objection to Motion to Approve Plan Confirmation ¶¶ 4-6. [Dkt. No. 49].

of the Property.[11] *See* 11 U.S.C. § 1124(1) ("a class of claims or interests is impaired under a plan, unless, with respect to each claim or interest of such class, the plan – (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest").

Because the Plan alters the legal rights of the First Mortgagee, it is an impaired class entitled to vote on the Plan, and plan confirmation requires the affirmative vote of at least one class of impaired claims. 11 U.S.C. § 1129(a)(8), (10). The First Mortgagee has made it clear that it will not vote in favor of a plan that impermissibly rewrites the terms of the mortgage in violation of § 1123(b)(5). Hear'g Tr. at 25:9-13 (wherein counsel for mortgagee notes that "here, we do not have an appropriate plan" and suggests an alternative to the existing plan that could result in a "feasible plan, one that my client would vote for"). Therefore, the Plan is not confirmable as filed, and dismissal of the chapter 11 case was warranted. *See Lippman*, 2021 WL 1784312, at *3 (concluding that dismissal was appropriate where appellant could not meet statutory requirements under Section 1129(a) for confirmation because the plan did not propose to pay the only creditor in the bankruptcy case in full, and the creditor would not vote in favor of such plan); *see also In re Babayoff*, 445 B.R. at 77 (concluding that cause existed where debtor would be unable to effectuate plan because largest unsecured creditor had a claim that was impaired under the plan, creditor "stated his intention" not to vote for the plan, and the plan could not be confirmed without such creditor's support).

---

[11] The Debtor insists, without basis, that "he will insure [*sic*] Creditor VRMGT/Fay will be paid in full with NO loss whatsoever." Reply at 1. This is not what the Plan provides. Plan at 2-3.

For these reasons, and the reasons stated on the record at the Dismissal Hearing and the Stay Hearing, the Debtor's plan is unconfirmable.[12] Lacking support in the case law and the applicable provisions of the Bankruptcy Code, the Court finds that the Debtor cannot demonstrate a substantial possibility of success on the merits of his appeal of the Dismissal Order.

D. Public Interest

It is well-settled that "the public has a strong interest in the expeditious administration of the bankruptcy proceedings and preventing the abuse of the court system by those who are unable or unwilling to pay their debts in a timely fashion[.]" *See In re Jones*, 2023 WL 3856333, at *3; *In re G.L.A.D. Enterprises, LLC*, 2023 WL 3856331, at *3.

The Debtor maintains that granting a stay serves the public interest "by ensuring that individuals have a fair opportunity to rectify their financial situation through the bankruptcy process." Stay Mot. at 2. As noted by the UST, this Court afforded the Debtor such opportunities on numerous occasions during the pendency of the chapter 11 case. UST Obj. at 10-11. The record is consistent with the UST's position. The chapter 11 case has been pending for more than a year and the Debtor has not proposed a confirmable plan. As stated earlier, the Dismissal Motion and the Stay Relief Motion were both adjourned twice for more than three months to give the Debtor adequate opportunity to propose a confirmable plan. Despite the passage of time, the Debtor was unable to do so.

This Court has recognized that "[t]he interests of creditors are a significant determinant of the public interest in a bankruptcy case." *See generally In re Taub*, 2010 WL

---

[12] The UST argues that dismissal was appropriate for the additional reason that, because the Debtor has no income, the Plan cannot be funded and therefore cannot be effectuated. This Court has recognized that "[a] debtor's ability to effectuate a plan *may well turn on practical considerations*, including whether confirmation can be achieved." *See In re Babayoff*, 445 B.R. at 76 (emphasis added). A debtor is unable to effectuate a plan where it lacks the ability to formulate a plan or to carry one out. *Id.* The Monthly Operating Reports confirm that such is the case here.

15

3911360, at *6. Here, the Debtor has not made mortgage payments since November 2013, and the First Mortgagee has been unable to exercise its rights under the mortgage as the Debtor has filed twice for bankruptcy relief triggering in each instance the automatic stay. *See G.L.A.D. Enterprises, LLC*, 2023 WL 5127835, at *4 (noting that public interest did not weigh in favor of stay where "Appellant has not made mortgage payments for years" and "Appellee has been unable to obtain any relief because of the various bankruptcy filings, adversary proceedings, and appeals filed by Appellant"). Such creditor harms are against the public interest. *Id.*

Based on the record before the Court, granting "the stay would prolong the bankruptcy proceeding with no foreseeable offsetting gain and thus injure creditors," which "would be contrary to the public interest." *See In re 461 7th Ave. Mkt., Inc.*, 623 B.R. 681, 696 (S.D.N.Y. 2020), *aff'd,* No. 20-3555, 2021 WL 5917775 (2d Cir. Dec. 15, 2021); *see also In re 473 W. End Realty Corp.*, 507 B.R. 496, 508 (Bankr. S.D.N.Y. 2014) (denying motion for stay pending appeal where stay would, among other things, "injure the interests of sound case management in the bankruptcy process, and as a consequence, would also injure the public interest"). As such, the public interest does not favor a stay.

## CONCLUSION

For the foregoing reasons, the Debtor's motion for a stay pending appeal is denied.

SO ORDERED

Dated: September 25, 2023
Central Islip, New York

**Louis A. Scarcella**
**United States Bankruptcy Judge**